```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| BAUTISTA CAYMAN ASSET COMPANY. | |
| **Plaintiff,** | |
| v. | Civil NO. 16-3129 (FAB) |
| CENTRO CARDIOVASCULAR DE MANATÍ III, C.S.P.; *et al.*, | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is plaintiff Bautista Cayman Asset Company ("Bautista" or "plaintiff")'s Motion for Reconsideration (Docket No. 89), and defendants Centro Cardiovascular de Manatí III C.S.P., José Ramón Martínez-Barroso, his wife Virgen Milagros Rivera-Colón, and their Conjugal Legal Partnership Martínez-Rivera (collectively "defendants")'s Motion for Reconsideration. (Docket No. 86.) Both motions request reconsideration of the Court's Opinion and Order (Docket No. 85) denying plaintiff's and defendants' dueling Motions for Summary Judgement and granting defendants' Motion *in Limine*. (Docket Nos. 52, 53.) For the following reasons the Court **DENIES** defendants' Motion for Reconsideration, **GRANTS** plaintiff's Motion for Reconsideration, and **GRANTS** plaintiff's Motion for Summary Judgement.

## I. Background

On December 12, 2016, Bautista filed a Complaint (Docket No. 1) for collection of monies and to foreclose on of several mortgages held by defendants. Bautista is a successor in interest to Doral Bank ("Doral") and the secured party of record for a commercial loan made to defendants. On February 27, 2015, the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. On March 27, 2015, FDIC entered into an agreement with Bautista to acquire certain of Doral's assets, including the loan and collateral documents described in the Complaint. (Docket No. 1.) The commercial loan in question was executed on October 18, 2012, and the principal amount was of eight hundred sixty-two thousand five hundred nine dollars and thirty-three cents ($862,509.33), with interest at an annual rate of 6% and a maturity date on October 18, 2018. (Docket No. 1 Ex. 2.)

The Loan Agreement is guaranteed by, among others, the following mortgage notes:

   a.   Mortgage note executed by co-defendants, Martínez-Barroso and Rivera Colón November 20, 1998, payable to the order of Banco Santander de Puerto Rico, thereafter endorsed to Doral Bank, for the principal amount of $220,000.00 authenticated under affidavit number 2,308 of Notary Public María de Lourdes González Rivera.

* * *

b.  Mortgage note executed by defendants on December 16, 1999, payable to the order of Banco Popular de Puerto Rico, thereafter endorsed to Doral Bank, for the principal amount of $650,000.00 authenticated under affidavit number 22,745 of Notary Public Francisco J. Arraiza Donate.

c.  Mortgage note executed by defendants on March 12, 2004, payable to the order of Doral thereafter endorsed to Bautista, for the principal amount of $39,000.00 authenticated under affidavit number 15,909 of Notary Public Tomás Correa Acevedo.

The Mortgage Notes, through the Mortgages, encumber the following properties:

a.  Property A (7,284): URBAN: Lot number G-9 in the inscription plat of the 0143 Project located in the Coto and Sabana Seca wards of the municipality of Manatí, Puerto Rico, with a superficial area of 284.62 square meters. Its boundaries are: by the NORTH with Marginal Street South, at a distance of 13.00 meters; by the SOUTH, with lots numbers 8 and 21 of the G block, at a distance of 10.20 meters; by the EAST with lot number 10 of the G block at a distance of 19.78 meters; and by the WEST with lands owned by widower Teresa Fernandez, Eusebio Carbajal and Anselmo Rosario at a distance of 24,25 meters. It appears registered on page 149 of volume 175 of Manatí, Lot 7,284.

b.  Property B (3,485): URBAN: Lot number 1 of the E block of the San Salvador Development located in the Cotto ward of the municipality of Manatí, Puerto Rico, with a superficial area of 386.10 square meters. Its boundaries are: by the NORTH at a distance of 29.83 meters with marginal street of the Development; by the SOUTH at a distance of 29.82 meters with lot number 2; by the EAST at a distance of 11.14 meters with the Public Housing project known as Cordova Davila; and by the WEST at a distance of 14.75 meters with street number 4. It

        contains a one level and single-family reinforced concrete and concrete blocks house, today a two-level concrete and concrete blocks commercial building. It appears registered on page 40 of volume 91 of Manatí, Lot 3,485.

c.      Property C (3,587): URBAN: Lot located in the San Salvador Development located in the Cotto ward of the municipality of Manatí, with a superficial area of 376.647 square meters Its boundaries are: by the NORTH, with lot number 1 at a distance of 29.82 meters; by the SOUTH, with lot number 3 at a distance of 29.53 meters; by the EAST with the Public Housing Project known as Cordova Davila, at a distance of 12.69 meters; and by the WEST, with street number 4 at a distance of 12.69 meters. It appears registered on mobile volume 445 of Manatí, Lot 3,587

On February 29, 2016, Bautista sent a Notice of Default to Defendants. Bautista contends, and defendants do not dispute, that defendants breached their obligations under the Loan Agreement by failing to make the required payments. (Docket No. 55.) Bautista has therefore accelerated the amounts owed and declared all obligations under the Loan Agreement to be immediately and automatically due and payable in full. Id.

Bautista and its mortgage servicer, Capital Crossing Puerto Rico L.L.C. ("Capital Crossing"), do not hold any license and are not registered with the Office of the Commissioner of Financial Institutions ("OCIF") pursuant to the Act to Regulate the Business of Mortgage Loans in Puerto Rico, Act No. 247 of December 30, 2010 ("Act No. 247"). P.R. Laws Ann. tit. 7, § 3051A. Nonetheless,

Civil No. 16-3129 (FAB)                                           5

Bautista believes it is not subject to Act No. 247 licensing requirement and has produced letters ("OCIF Letters") between Bautista, Capital Crossing, and OCIF, where OCIF confirms that they are not subject to the licensing requirement based on the facts laid out by Bautista and Capital Crossing in their correspondence.  Defendants contend, however, that Bautista and Capital Crossing *are* subject to Act No. 247's licensing requirement; consequently, they argue that Bautista's and Capital Crossing's failure to obtain the appropriate licenses has rendered the Mortgage Loan "null and void."  (Docket No. 52.)

On June 3, 2019, Judge Carmen C. Cerezo who was initially appointed to this case, issued an Opinion and Order granting plaintiff's motion to dismiss the amended counterclaim, denying both parties' motions for summary judgement, and granting defendants' motion *in limine* to exclude the OCIF Letters.  (Docket No. 85.)  The Court later seemingly changed course and ordered plaintiffs to produce the complete OCIF letters in response to dueling motions filed by both parties to reconsider her initial order.  (Docket No. 87.)

## II. Legal Standard

The Federal Rules of Civil Procedure "do not [explicitly] recognize a motion for reconsideration."  <u>Portugués-Santa v. B. Fernández Hermanos, Inc.</u>, 614 F. Supp. 2d 221 (D.P.R. 2009)

Civil No. 16-3129 (FAB)                                                    6

(quoting Lavespere v. Niagara Mach. & Tool Works Inc., 910 F.2d 167, 173 (5th Cir. 1990)).  Those motions are usually decided under Federal Rules of Civil Procedure 59(e) or 60(b).  See, e.g., In re Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987) ("Notwithstanding that [appellant] did not denominate any particular rule as the springboard for its reconsideration motion, it is settled in this circuit that a motion which asked the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)."); see also, United States v. $23,000 in United States Currency, 356 F.3d 157, 165 (1st Cir. 2004) (noting that motions requesting modification of a court's earlier disposition of a case because of an erroneous legal result are usually brought under Fed. R. Civ. P. 59(e), but utilizing the trial court's Rule 60(b) framework for the motion for reconsideration).

Neither rule applies at this juncture of the case, however, because both rules apply only to final judgments.  See Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b); United States v. Baus, 834 F.2d 1114, 1118 (1st Cir. 1987).  Judgment, as used in the Federal Rules, is defined as "any order from which an appeal lies."  Fed. R. Civ. P. 54(a).  The Court's denial of defendant's Motion for Summary Judgment and Motion *in Limine* does not dispose of plaintiff's claims nor does it fall under any special carve-out

Civil No. 16-3129 (FAB)                                                    7

that would allow for an immediate appeal of the denial of the motions.  See, e.g., Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 6-7 (1st Cir. 2005) (collecting cases, in which certain pretrial orders are deemed immediately appealable and thus falling under Fed. R. Civ. P. 59(e)); see also, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 143-44, (1993) (discussing judgments that may be appealed even though they are not complete and final judgments).  Because Rules 59(e) and 60(b) do not apply here, the decision to reconsider the denial of plaintiff's and defendants' Motions for Summary Judgment, as well as defendants' Motion *in Limine* fall squarely within the plenary power of the court that issued the initial ruling, this Court. See Campos v. Puerto Rico Sun Oil Co., 536 F.2d 970, 972 n. 6 (1st Cir. 1976); Lewis v. Grinker, 660 F.Supp. 169, 170 n. 1 (E.D.N.Y. 1987); Johnson v. Township of Bensalem, 609 F.Supp. 1340, 1342 (E.D.Pa. 1985); Above The Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va. 1983); see also, John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 90-91, (1922) ("if an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity.")

**III. Discussion**

The Court shall exercise its discretion in favor of entertaining both motions for reconsideration. (Docket Nos. 86, 89.) The initial complaint in this case was filed on December 12, 2016. (Docket No. 1.) The denial of summary judgement and ruling on the Motion *in Limine* which are before the Court on the motions to reconsider were issued in June 2019. (Docket No. 85.) Since then, there have been some meaningful changes in the case which will be discussed below. In addition, the original order does not go into detail regarding the Court's rationale behind the denial of summary judgement or the granting of defendants' Motion *in Limine*. For these reasons, the Court agrees with the parties and has determined this is one of those rare occasions when a motion for reconsideration serves a valuable function. See Above The Belt, Inc., 99 F.R.D. at 101.

Bautista's and defendants' dueling motions for reconsideration present two issues for the Court to resolve. First, a question remains regarding correspondence between Bautista and Puerto Rico's Office of the Commissioner of Financial Institutions. Judge Cerezo granted defendants' Motion *in Limine* to exclude the OCIF letters, in part due to their incompleteness, but later ordered Bautista to produce the complete letters. (Docket No. 87.) Second, the Court must determine whether or not

Civil No. 16-3129 (FAB)                                              9

to grant the defendants' Motion for Summary Judgement on the grounds that Act No. 247 is applicable to Bautista, and as such, any enforcement action taken by the plaintiff is unenforceable, or conversely, whether Bautista's actions fall outside the licensing requirement contemplated by Act No. 247, in which case summary judgment should be granted for the plaintiff.[1]  (Docket No. 132.)

    **A.  OCIF Letters**

In support of their argument that they are not subject to Act No. 247's licensing requirement, Bautista has submitted letters between themselves, Capital Crossing, and the OCIF, the government agency charged with licensing mortgage servicers in Puerto Rico.  The OCIF letters were the subject of defendants' Motion *in Limine* which was ultimately granted. (Docket No. 85.) In essence, defendants' protested plaintiff's violation of discovery deadlines when producing the OCIF letters.  Id.  On July 27, 2017, defendants filed an amended answer and counterclaim specifically alleging lack of licensure and putting Bautista on notice that the letters were relevant.  Id.  Discovery closed on November 6, 2017, but the OCIF letters were not submitted to the Court until December 14, 2017.  Id.

---

[1] The parties have stated in a joint informative motion that these are the pending issues and that a ruling in support of either motion to reconsider would be dispositive of the case.  (Docket No. 132.)

Civil No. 16-3129 (FAB)                                                    10

></p>
Pursuant to the Federal Rules of Civil Procedure "[i]f a party fails to provide information or identify a witness as required by [Federal Rule of Evidence] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to the opposing party. Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). Evidence offered to rebut a summary judgment motion may be excluded under Rule 37(c)(1) if the non-moving party has failed to provide the opposing party with proper disclosures and supplements as required by Rule 26(a) and (e). See Southern States, 318 F.3d at 596; MicroStrategy Inc. v. Business Objects, 429 F.3d 1344, 1356–57 (Fed. Cir. 2005.)  The only exceptions to exclusion are when the nondisclosure is substantially justified or is harmless. Southern States, 318 F.3d at 596–97.  In exercising its broad discretion to determine whether litigant's failure to timely disclose information required by discovery rule was substantially justified or harmless, so as not to warrant exclusion of evidence, district courts are guided by the following factors:  (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent

Civil No. 16-3129 (FAB)                                           11

to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosure party's explanation for its failure to disclose the evidence.  Id.; Fed. R. Civ. P. 37(c)(1); see also Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir. 2017).

When ruling on the Motion *in Limine*, the Court did not explicitly consider the factors laid out above; the Court found plaintiff's explanation for their failure of production unavailing and held that the letters should be excluded, in part because of their incompleteness.  At the time, plaintiff had only produced the response from OCIF to its inquiries but not the submissions made by Bautista and Capital Crossing to OCIF that prompted the letters.  (Docket No. 57.)  This case is one of the rare moments where reconsideration is warranted, chiefly because the issue of incompleteness contemplated in the Court's initial ruling on the Motion *in Limine* has since been cured.

After careful review, the Court has determined that it will rely on all the OCIF letters when ruling on the Motions for Reconsideration.  As discussed, the issue of incompleteness was resolved by the Court's order (Docket No. 87).  Furthermore, the Court finds that the balance of factors weighs in favor of admission.  See Southern States, 318 F.3d at 596-97.

Civil No. 16-3129 (FAB)                                         12

      Nearly five years have passed since the OCIF letters were fully disclosed.  During that time, the parties have filed multiple motions explaining the contents of the OCIF letters and requesting a ruling on the matter. See e.g. (Docket Nos. 71, 86, 89, 108, 132.)  Therefore, the first two factors, the surprise to the party against whom the evidence would be offered, and the ability of that party to cure the surprise, weigh in favor of admitting the evidence. Defendants cannot plausibly claim now that they are surprised by the evidence, or that they have not had ample time to cure that surprise.

      The third and fourth factors, the extent to which allowing the evidence would disrupt the trial and the importance of the evidence, also weigh in favor of admitting the OCIF letters. As of yet, there is no trial to disrupt, and more importantly, the OCIF letters speak to the one and only issue that remains unresolved, whether Act No. 247's licensing requirement applies to Bautista and Capital Crossing. The final factor, the nondisclosure party's explanation for its failure to disclose the evidence, weighs in favor of exclusion.  As discussed above, the Court already rejected the justification's given for plaintiff's delayed production of the OCIF letters and there has been no further explanations proffered by Bautista that would warrant a reconsideration of that decision.

**B.   Whether Act No. 247's Licensing Requirement Applies to the Plaintiff**

Foreclosing on a mortgage is not included in Act No. 247's definition of mortgage servicing.  In fact, Act No. 247 makes no mention of foreclosure proceedings in its list of activity requiring a mortgage license. The licensure requirement applies to "any person partially or totally engaged in mortgage lending, mortgage brokerage, or mortgage loan origination activities . . ." P.R. Laws Ann. tit. 7, § 3051A.  The statute provides the following definitions:

> (b)  Mortgage loan servicing. The delivery of periodical account statements to the client; the processing of mortgage loan payments; the receipt of payments and the application thereof to the payments of principal of, interest on, and late fees of the loan, as well as deposits to any account or escrow accounts; payment of property taxes and insurance premiums during the entire term of a mortgage loan; the custody of records and documents related to the mortgage loan and the rendering of supplementary services; and compliance with the applicable laws, among others.
>
> * * *
>
> (j)  Mortgage broker. Any natural or juridical person, whether for profit or not, that offers and contracts services to facilitate, process, or obtain mortgage loans for third parties to acquire real property in exchange for a service fee that may be direct, indirect, ostensible, concealed, or disguised from the person for whom the same is negotiated, processed, planned, granted, or obtained, as well as from any other person that is part of the transaction with whom a written agreement has been entered into. It shall also include any person who assists a consumer in obtaining or applying to obtain a mortgage loan by advising on loan

Civil No. 16-3129 (FAB)                                                14

      terms, preparing loan packages, or collecting information on behalf of the consumer.

      * * *

      (w) Mortgage lending business. Business whereby one or more cash advances, or their equivalent, are made by a lender (commonly known as a mortgage creditor) that is secured by a mortgage deed that duly creates a lien on one or more real property and whereby the conditions and form of repayment or liquidation of the loan are set forth. It further includes mortgage loan servicing as defined in subsection (b) of this section.

      * * *

      (z) Mortgage loan originator. An individual who, for compensation or gain or with the expectation of receiving compensation or gain, engages in the loan origination business through the receipt of a mortgage loan application, or who offers or negotiates the terms of a mortgage loan

      P.R. Laws Ann. tit. 7, § 3051A.

It is undisputed that prior to March 2017, Bautista did not own the loan so it cannot have been required to hold a license. Likewise, after December 2016 the loan was being processed for foreclosure and the defendants do not argue that Bautista or Capital Crossing are subjected to Act No. 247's licensing requirement for those activities. (Docket No. 71 p. 23.) While the Opinion and Order issued at Docket No. 85 did not clearly specify the issue of fact, it did state that there was a genuine dispute "as to whether plaintiff engaged in activities that would render it subject to Act No. 247's licensing requirement." Presumably,

Civil No. 16-3129 (FAB)                                              15

the order is referring to the period of time between March 27, 2015, when Bautista acquired the loans and allegedly created Capital Crossing to service the loans and February 29, 2016, when Bautista sent defendants the notice of default.  Indeed, defendants allege that Bautista, through its loan servicer Capital Crossing, engaged in mortgage loan servicing from March 2015 until December 2016, and was therefore subject to Act No. 247's licensing requirement during that time.  (Docket No. 71 p. 23.)

While Bautista does not make an explicit argument about its activity between March 2019 and February 2016, it does repeatedly claim that *none* of its activities require a license pursuant to Act No. 247.  (emphasis added) In support of its argument Bautista cites to Bautista Cayman Asset Company v. Plaza Degetau Investment Corp., Civ. No. 16-2046 (D.P.R. May 3, 2019) (Vélez-Rivé J.) ("Plaza Degetau") as "extremely relevant" to this case.  While the Court does take judicial notice of the Plaza Degetau ruling, it does not help to resolve the material issue of fact.  Lopes v. Riendeau, 177 F. Supp. 3d 634, 666 (D. Mass. 2016) ("A court may take judicial notice of judicial decisions."); see also Berríos-Romero v. Estado Libre Asociado de Puerto Rico, 641 F.3d 24, 27 (1st Cir. 2011) (taking judicial notice of a decision by the Puerto Rico Court of Appeals.)  In Plaza Degetau, Bautista acquired the loans on March 27, 2015, and began foreclosing on

them less than four months later, on July 23, 2015. Plaza Degetau Civ. No. 16-2046 (D.P.R. May 3, 2019) (Vélez-Rivé J.)  Based on these facts, the court in Plaza Degetau ruled that "plaintiff needed no [license] to carry out mortgage executions, which is what Plaintiff is doing here."  Id.  In contrast, the defendants here allege that Bautista and Capital Crossing were engaged in mortgage loan *servicing*, not merely mortgage executions and that it was the mortgage servicing activity that required them to be licensed pursuant to Act No. 247. (Docket No. 71 p. 23) (emphasis added).

Bautista's next argument is that the Puerto Rico Office of the Commissioner of Financial Institutions has already ruled in its favor and issued letters stating that Bautista and Capital Crossing are not subject to Act No. 247's licensing requirement. As discussed above, the Court will consider these letters in ruling on the dueling motions to reconsider.  While the defendants do not discuss the contents of the letters in detail, they do highlight the following language from the OCIF's letter; "the foregoing administrative determination is issued based on the particular facts and circumstances as described in [the plaintiff's] letter." (Docket No. 88 Ex. A.)  Defendants contend that the facts laid out by Bautista in the letters to OCIF were misleading and that Bautista misrepresented its actions by telling OCIF that Capital

Civil No. 16-3129 (FAB)                                          17

Crossing "would not act as a mortgagor [sic] servicer." (Docket No. 71 p. 23.)

The Court finds the defendants' arguments unavailing. The facts set forth by Bautista and Capital Crossing in the OCIF letters track closely to the facts in this case.  In addition, the letter written by Bautista clearly reports that Capital Crossing "expects to *service* certain mortgage loans." (Docket No. 88 Ex. A.) (emphasis added) OCIF found that pursuant to the fact pattern laid out in the letters, Bautista and Capital Crossing were "not required to be licensed by the [OCIF] pursuant to [Act No. 247] … or any other statute or regulation under the jurisdiction of [the OCIF]." Id.  The Court cannot find, and defendants do not allege, any other meaningful difference between the facts laid out by Bautista in the OCIF letters and its conduct in this case that would require Bautista and Capital Crossing to be licensed under Act No. 247.

The Court defers to OCIF's expertise as the agency charged with implementing Act No. 247's and finds Bautista is not subject to Act No. 247's licensing requirements in this case. See In re Ludlow Hosp. Soc., Inc., 216 B.R. 312 (Bankr. D. Mass. 1997) ("[i]t is well-settled that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."); Northeast Utilities Serv. Co. v.

Fed. Energy Regulatory Comm'n, 993 F.2d 937, 944 (1st Cir. 1993); see also Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, (1984).  Bautista may rely on an administrative agency's ruling when conducting its business in Puerto Rico.  Ellis v. International Playtex, Inc., 745 F.2d 292, 300 (4th Cir. 1984) (admissibility is assumed "because of the reliability of the public agencies usually conducting the investigation and 'their lack of any motive for conducting [the investigation] other than to inform the public fairly and adequately'") (quoting Kehm v. Proctor & Gamble, 724 F.2d 613, at 618, 619 (8th Cir. 1983)).  Because this is the only remaining dispute in this case, the Court **GRANTS** summary judgement for the plaintiff, and **ORDERS** the foreclosure of the mortgages described above.

**IV. Conclusion**

For the above reasons the Court **DENIES** defendants' Motion for Reconsideration (Docket No. 86), **GRANTS** plaintiff's Motion for Reconsideration (Docket No. 89), and **GRANTS** plaintiff's Motion for Summary Judgment.  (Docket No. 53.)  This case is **DISMISSED, with prejudice**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 12, 2023.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE